**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Mr. Smoky's BBQ, LLC, et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>United States, et al.,<br><br>Defendants. | No.  CV 13-2585-PHX-DGC<br><br><br>**PRELIMINARY INJUNCTION** |

Plaintiffs have filed an application for a temporary restraining order and preliminary injunction, and Defendants have filed a response.  Docs. 4, 10.  The Court held a hearing on December 20, 2013.  The Court will grant a preliminary injunction.

**I.     Background.**

The facts in this order are taken from Plaintiffs' affidavits and the parties' briefing. In 2005, Alfred and Shamirin Joseph, husband and wife, acquired Bubba's Drive Thru in Surprise, Arizona.  Bubba's is located in a poor neighborhood.  Most of the people who live in the area receive government assistance in some manner, usually in the form of food stamps, now known as the Supplemental Nutrition Assistance Program ("SNAP").

Plaintiffs received a letter from Defendants on September 25, 2013, charging violations of SNAP regulations.  The letter listed SNAP trafficking violations which occurred in 2008 and 2009, almost five years earlier, and concerned approximately $55 in SNAP benefits.  The letter gave Plaintiffs ten days to respond to the charges.  Plaintiffs requested additional details about the charges, but received no further information from

Defendants. Because the charges concerned events from several years ago, Plaintiffs lacked records and memories to respond fully. Plaintiffs responded in writing to the charges on November 8, 2013, and received a decision letter from Defendants on December 5, 2013. The decision letter informed Plaintiffs that, effective immediately, Plaintiffs were permanently disqualified from participating in the SNAP program. Plaintiffs had ten calendar days to request administrative review, which they did, but SNAP regulations prevent Plaintiffs from applying for a stay of the disqualification during administrative and judicial review. *See* 7 C.F.R. § 279.2(d).

Plaintiffs assert without contradiction that they operate a very small store, accommodating only three or four customers at a time, that they earn only $26,000 annually from the store, and that loss of their SNAP qualifications will put them out of business in the next few weeks. They claim that they will be out of business before they can pursue any administrative or judicial review of the decision, and note that the law precludes them from recovering their losses if their disqualification ultimately is found to have been erroneous. *See* 7 U.S.C. § 2023(a)(18). They assert a due process violation.

**II.     Preliminary Injunction.**

The parties agreed at the December 20 hearing that the Court should rule on Plaintiffs' request for a preliminary injunction, but afford the parties an opportunity to make additional submissions after the ruling. Such an injunction is an extraordinary remedy "that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam) (quoting 11A C. Wright, A. Miller, & M. Kane, *Federal Practice and Procedure* § 2948, pp. 129-130 (2d ed. 1995)). An injunction may be granted only where the movant shows that "he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *Am. Trucking Ass'n, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009).

### A. Likelihood of Success on the Merits.

The Court concludes that Plaintiffs are likely to succeed on their as-applied due process challenge. The due process clause provides that an individual cannot be deprived of property without constitutionally adequate procedures. *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 541 (1985). To prevail on a due process claim, Plaintiffs must show that they have a property interest in their SNAP qualification and that they received inadequate process before losing that property interest. *Id*. Defendants do not dispute that Plaintiffs have such a property interest. Doc. 10 at 10-11.

The Supreme Court in *Mathews v. Eldridge*, 424 U.S. 319 (1976), set forth three factors by which to judge the sufficiency of an administrative procedure:

> (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of the interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the government's interest, including the function involved and the fiscal and administrative burdens that the additional substitute procedural requirement would entail.

*Id*. at 335.

Considering these factors in this as-applied challenge, the Court concludes that the procedures afforded Plaintiffs are likely to be found insufficient. As noted, Plaintiffs assert without contradiction that they will be out of business within a matter of weeks. Thus, if their disqualification takes effect immediately as provided in Defendants procedures, with no possibility of a stay, Plaintiffs will have been permanently deprived of their business and livelihood through a procedure that allowed them only ten days to respond in writing to charges that are four or five years old. Under *Matthews*' three-factor analysis, the Court cannot conclude that such procedures are sufficient.

First, a significant private interest – Plaintiffs' livelihood – will be affected by this official action. Second, the risk of erroneous deprivation is substantial given the age of the charges, the loss of memories and records in the interim, and the fact that Plaintiffs were afforded no opportunity to be heard other than a written response required within

ten days. Third, although the government clearly has a significant interest in prompt action when SNAP trafficking violations occur, the urgency of that interest is significantly undercut in this case by the fact that the Defendants waited four or five years to bring the charges. In addition, the burden of the further procedures Plaintiffs request – a stay of disqualification during administrative and judicial review – is not significant given Defendants' multi-year delay in seeking disqualification.

Two cases have addressed similar due process arguments, *Ameira Corp. v. Veneman*, 169 F.Supp.2d 432 (M.D. N.C. 2001), and *Mansour v. United States*, 2009 WL 3763778 (E.D. Cal. 2009), and have found no constitutional violation. The Court would find the reasoning of these cases persuasive in a facial challenge to Defendants' procedures, but cannot reach the same conclusion in this as-applied case. Given the unique facts of this case, the disqualification will be permanent, will cause the loss of Plaintiffs' business, and will be based entirely on a single opportunity to respond in writing, on only ten days' notice, to years-old charges. Both *Ameira* and *Mansour* noted that Defendants' procedures afforded the plaintiffs in those cases opportunities for administrative and judicial review of the SNAP disqualification decision. In light of Plaintiffs' tenuous financial situation, no similar opportunity exists here, and the Court cannot conclude that the single, ten-day written response opportunity is sufficient process under the *Matthews* considerations. Plaintiffs are therefore likely to prevail on the merits of their due process claim.

### B.     Irreparable Injury.

Permanent loss of Plaintiffs' business and livelihood, with no opportunity for redress (7 U.S.C. § 2023(a)(18)), constitutes a likelihood of irreparable harm.

### C.     Balance of the Equities.

Defendants note that the government's strong interest in policing SNAP trafficking and promptly closing down dishonest operations outweighs Plaintiffs' interest in maintaining their SNAP qualification, particularly when Plaintiffs are only incidental beneficiaries of the SNAP program. The Court agrees with this proposition generally. In

this case, however, Defendants' delay of four or five years in bringing charges seriously undercuts any claim that the government had a significant or urgent interest in disqualifying Plaintiffs from the SNAP program. In this as-applied case, the Court concludes that Plaintiffs' imminent loss of their business and livelihood outweighs the government's long-delayed interest in enforcing the SNAP regulations against Plaintiffs.

### D.   Public Interest.

Similarly, the public interest normally would favor an honest and effectively enforced SNAP program. On the unique facts of this case, however, the Court concludes that the public interest would not be served by permanently shutting down Plaintiffs' business on ten days' notice with stale charges that cannot easily be addressed, particularly when the charges were not sufficiently important for Defendants to act promptly.

## III.   Preliminary Injunction.

The Court finds that Plaintiffs have carried their burden of showing that a preliminary injunction is warranted. The Court will require Plaintiffs to post a bond of $250. The Court is not persuaded that Defendants face any greater risk from the possible improper entry of this injunction, particularly when Defendants have identified only $55 of SNAP trafficking violations in the last five years of Plaintiffs' business.

**IT IS ORDERED:**

1. Plaintiff's application (Doc. 4) is **granted**. Defendants are preliminarily enjoined from (a) disqualifying Plaintiffs from accepting Supplemental Nutrition Assistance Program ("SNAP") benefits as a form of payment for eligible items sold in Plaintiffs' store; (b) collecting any fines or penalties as a result of the disqualification; and (c) disabling of Plaintiffs' Electronic Benefit Transfer ("EBT") connection and demanding return of Plaintiffs' EBT machine. If the EBT connection has been disconnected, it must be reconnected immediately. This preliminary injunction shall remain in effect throughout the pendency of this action.

2. By **January 10, 2013**, either party may request the opportunity to submit

- 5 -

additional briefs or factual material to the Court related to this preliminary injunction. The request shall be made in the form of a joint conference call to the Court. If additional submissions are not requested, the parties shall, by the same date, file a joint proposal for the remaining litigation of this case, including a proposed case schedule.

    3.    Plaintiffs shall post a $250 bond with the Clerk of the Court.

Dated this 23rd day of December, 2013.

_David G. Campbell_
United States District Judge